# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>Plaintiff,<br><br>-vs.-<br><br>Christophe Rivoire,<br><br>Defendant. | Case No. 19-cv-11701 |

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO THE ONTARIO SUPERIOR COURT OF JUSTICE (LETTER ROGATORY)**

The United States District Court for the Southern District of New York (the "Court") presents its greetings and compliments to the Ontario Superior Court of Justice in the Province of Ontario, Canada, and respectfully requests international judicial assistance to obtain evidence to be used in a civil proceeding before this Court in the above-captioned matter.

In the proper exercise of its authority, this Court has determined that testimony from the Canadian witness pursuant to the topics below is necessary to develop the factual record needed to resolve the issues in this litigation. This Court therefore requests the assistance described herein in the interests of justice. As set forth below, this Court stands ready to provide reciprocal assistance.

1. **Sender and Requesting Judicial Authority:**

Honorable J. Paul Oetken
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall US Courthouse
40 Foley Square
New York, NY 10007
Tel: 212-805-0266

**2. Names and Addresses of the Parties and their Representatives:**

| | | |
|---|---|---|
| a. | Plaintiff: | Commodity Futures Trading Commission<br>140 Broadway, 19th Floor<br>New York, NY 10005<br>Tel: 646-746-9887<br>Fax: 646-746-9939 |
| | Representatives: | Gabriella Geanuleas<br>Stephen Painter<br>James Wheaton<br>Benjamin Rankin<br>Commodity Futures Trading Commission<br>140 Broadway, 19th Floor<br>New York, NY 10005<br>Tel: 646-746-9887<br>Fax: 646-746-9939 |
| b. | Defendant: | Christophe Rivoire<br>Paris, France |
| | Representatives: | James J. Benjamin, Jr.<br>Parvin D. Moyne<br>Katherine L. Powers<br>Kaitlyn Tongalson<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>New York, NY 10036<br>Tel: 212-872-1000<br>Fax: 212-872-1002 |

**3. Person to Whom the Executed Request is to be Returned:**

Parvin D. Moyne
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Tel: 212-872-1076
Fax: 212-872-1002
Email: pmoyne@akingump.com

***on behalf of:***

Honorable J. Paul Oetken
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall US Courthouse
40 Foley Square
New York, NY 10007
Tel: 212-805-0266

**4. Witness to be Compelled to Give Evidence:**

Mark Hamlin
c/o Matthew Coogan
Lankler Siffert & Wohl LLP
500 Fifth Avenue
New York, NY 10110

The witness is a former trader at HSBC Holdings plc ("HSBC") in the New York office of their US subsidiary, HSBC Bank USA, NA. He is a resident of Ontario and a citizen of Canada.

**5. Nature and Purpose of the Proceeding:**

On December 19, 2019, the Commodity Futures Trading Commission (the "CFTC" or "Plaintiff") filed a complaint (the "Complaint") in the United States District Court for the Southern District of New York, a copy of which is attached hereto as **Exhibit A**. This is a civil lawsuit alleging that the defendant, Christophe Rivoire, violated various United States federal statutes, including the Commodities Exchange Act (the "Act"). Mr. Rivoire filed an answer to the Complaint, a copy of which is attached hereto as **Exhibit B**, denying the allegations as set forth therein.

The Complaint arises from a 2012 transaction involving subsidiaries of HSBC, a British multinational investment bank and financial services company, and a Japanese issuer ("the Issuer"). In July 2012, HSBC served as co-underwriter and sole swap arranger on a $2 billion

bond issuance (the "Bond Issuance") and corresponding U.S. dollar interest rate swap (the "Interest Rate Swap") for the Issuer (the Bond Issuance and Interest Rate Swap collectively, the "Transaction"). Under the terms of the Bond Issuance, the Issuer issued $2 billion 5-year obligation bonds and paid a fixed rate of interest to investors.

The Bond Issuance was priced on a conference call on July 11, 2012 (the "Pricing Call"). Concurrently with the Bond Issuance, the Issuer simultaneously entered into an Interest Rate Swap with HSBC, where the Issuer swapped its fixed-rate payment obligations for a floating rate obligation. The Issuer entered into the Interest Rate Swap in order to manage the interest-rate risk associated with the Bond Issuance. HSBC was the Issuer's counterparty in the Interest Rate Swap, which was priced after the Bond Issuance on the same July 11, 2012 Pricing Call. As a U.S. dollar interest rate swaps trader for HSBC, Mr. Hamlin participated in risk management trading activity related to the Interest Rate Swap.

**a. Plaintiff's Allegations**

The CFTC alleges that Mr. Rivoire, the head of HSBC's North American Rates business, engaged in a scheme to manipulate the prices of U.S. dollar interest rate basis swaps with a five-year maturity, which were used to price the Interest Rate Swap. *See* **Exhibit A**. The CFTC alleges that manipulated prices were used to price the Interest Rate Swap, resulting in a more profitable transaction for HSBC and a less profitable transaction for the Issuer.

**b. Claims for Alleged Violations of United States Federal Statutes**

The CFTC alleges that, by engaging in this conduct, Mr. Rivoire violated Sections 6(c)(1),13(a) and 13(b) of the Act, 7 U.S.C. § 9(1), 13c(a), and 13c(b) (2018), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2019). Complaint ¶¶ 129–144.

c. **Relief Sought**

The CFTC is seeking: (i) an order finding the Mr. Rivoire violated certain U.S. federal statutes; (ii) a permanent injunction; (iii) civil monetary penalties; (iv) disgorgement; (v) full restitution to the Issuer in the amount that the Issuer was harmed; (vi) costs and fees; and (vii) such other relief as the Court deems just and proper. Complaint at 36–38.

d. **Defendant's Responses**

Mr. Rivoire filed an answer to the Complaint, denying that he engaged in any manipulative scheme, or induced anyone else to do so. *See* **Exhibit B.** Mr. Rivoire maintains that HSBC's primary objective for the Interest Rate Swap was to achieve prudent risk management and smooth execution at market prices and that, in fact, the HSBC traders' risk management activity was executed within prevailing bids and offers, in competitive transactions that reflected the process of supply and demand. During the Pricing Call, a malfunction occurred on a particular broker screen that was maintained by a third-party interdealer broker firm ("ICAP") that was not affiliated with HSBC. After this malfunction became apparent, Mr. Rivoire became involved in the Pricing Call. Ultimately, the Issuer accepted a solution proposed by another HSBC participant on the Pricing Call, and the Interest Rate Swap was priced in a manner that was mutually agreed by HSBC and the Issuer.

**6. Evidence to be Obtained or Other Judicial Action to be Performed:**

The evidence sought from Mr. Hamlin through this request is relevant, is necessary for the trial of this case, and may be so used by the parties. Plaintiff represented in its Rule 26(a) Initial Disclosures, dated August 13, 2020, that Mr. Hamlin may have knowledge of the Transaction or other matters related to the allegations in the Complaint. In July 2012, Mr. Hamlin was a U.S. dollar swaps trader at HSBC, and he assisted the bank in trading to effectively manage the risk

associated with the Interest Rate Swap. Specifically, on July 11, 2012, Mr. Hamlin traded five-year U.S. dollar swap spreads to hedge the risk associated with the Transaction, executing all but one of the trades made for that purpose. Mr. Hamlin was also party to communications with Mr. Rivoire and others about the details of the Transaction.

Plaintiff has already had the opportunity to examine Mr. Hamlin. Plaintiff represented in its Objections and Responses to Defendant's First Set of Interrogatories, dated June 17, 2021, that CFTC staff have spoken with Mr. Hamlin on two separate occasions. On June 14, 2018, the CFTC spoke with Mr. Hamlin without counsel or a court reporter present, and on May 23, 2019, Mr. Hamlin provided on-the-record testimony before the CFTC and counsel for the Ontario Securities Commission. Defense counsel did not participate in either of these meetings, and have not had an opportunity to speak to the witness.

Mr. Hamlin is uniquely positioned to provide key evidence relevant to the issues in this litigation, including, but not limited to: (a) Mr. Hamlin's recollection of the Transaction and, specifically, his trading on July 11, 2012; (b) his understanding of risk management and its impact on his trading; and (c) whether Mr. Rivoire instructed him or anyone else to engage in market manipulation, fraud, or any other improper behavior. No other current or former HSBC employee can provide this insight on Mr. Hamlin's trading on July 11, 2012. The evidence requested will assist this Court in evaluating Plaintiff's allegations and resolving the disputed issues in this action.

Four months have elapsed since Mr. Rivoire's counsel first contacted Mr. Hamlin to request his testimony. Counsel for Mr. Rivoire continue to engage in good faith discussions with Mr. Hamlin's U.S. counsel, and will rescind this Letter Rogatory if he consents to provide testimony voluntarily. The following testimony is not otherwise obtainable by this Court through its own compulsory process.

**7. Topics of Questions for Oral Examination of the Witness:**

a. Mr. Hamlin's roles and responsibilities at HSBC in July 2012;

b. Mr. Hamlin's understanding of the broker market for swap spreads in July 2012, including how broker screens functioned, the role of interdealer brokers, and the impact of trading on broker screens;

c. Mr. Hamlin's knowledge of and experience with bond issuances and related interest rate swap transactions generally;

d. Mr. Hamlin's knowledge and understanding of HSBC's practices regarding risk management in connection with interest rate swaps related to a new bond issuance;

e. Mr. Hamlin's recollections of the preparation for and involvement in the Transaction, including his trading of five-year U.S. dollar swap spreads;

f. Mr. Hamlin's recollection and interpretation of communications with Mr. Rivoire and others regarding the Transaction;

g. Mr. Hamlin's recollection and interpretation on trade data reflecting HSBC's transactions in five-year U.S. dollar swap spreads on July 11, 2012;

h. Mr. Hamlin's recollection and interpretation of the Pricing Call, including the discussion regarding the screen malfunction;

i. Mr. Hamlin's experience at HSBC working on similar transactions with the Issuer; and

j. Mr. Hamlin's experience at HSBC working with Mr. Rivoire and other members of the HSBC Rates desk.

**8. Factors Considered by This Court:**

In considering whether to issue this Letter Rogatory, this Court considered, among other things, the expense and inconvenience associated with Mr. Hamlin appearing for a deposition at a location near his home; whether answering questions about the enumerated topics would subject him to any undue prejudice; and whether the information to be obtained from Mr. Hamlin can be obtained by the parties from another source.

This Court also considered that the purpose of the deposition of Mr. Hamlin is not merely for discovery purposes, but to obtain and preserve his testimony for trial. Mr. Hamlin cannot be compelled to testify at the trial in this litigation. The transcript of his deposition will therefore be used in place of his live testimony at trial.

Based on the above factors, this Court believes that the requested testimony from Mr. Hamlin is necessary and appropriate, reasonable in scope, and not otherwise available to the parties. The Court is not aware of any public policy of Canada or the United States that may be violated by complying with this request.

**9. Request for Use of Laws of the Requesting State and Related Special Rights of Witness:**

This Court respectfully requests that the deposition of Mr. Hamlin be subject to the U.S. Federal Rules of Civil Procedure. Under the Federal Rules of Civil Procedure, which govern civil proceedings in the courts of the United States, a person from whom discovery is sought may apply to this Court for a protective order to prevent annoyance, embarrassment, oppression, or undue burden or expense. Also, a deposition may not exceed one day of seven hours of testimony, unless the parties otherwise stipulate or the Court otherwise orders. This Court does not anticipate (and does not request the compulsion of) a deposition of Mr. Hamlin above the seven-hour limit under United States rules.

**10. Request for Compulsory Process for Examination of Witness and Timing of Request:**

This Court respectfully requests that the Ontario Superior Court of Justice issue the appropriate orders, or other compulsory process, necessary to compel Mr. Hamlin's appearance for an examination under oath at a time, date, and place within Ontario to be agreed upon by the witness and counsel for the parties, or otherwise specified by the Ontario Superior Court of Justice.

This Court also notes that Ranjan K. Agarwal, of the law firm Bennett Jones, 3400 One First Canadian Place, P.O. Box 130, Toronto, Ontario M5X 1A4 Canada, will serve as local counsel in filing this request.

This Court has ordered the parties to this action to complete all fact discovery by January 31, 2022 [Dkt. #36]. Accordingly, a response to this Letter Rogatory is respectfully requested by November 30, 2021, or as soon thereafter as reasonably possible, in acknowledgement of possible delays experienced due to COVID-19.

**11. Reimbursement for Costs:**

The reasonable costs, including costs for copying of documents, and attendance fees typically granted by the Ontario Superior Court of Justice, will be borne by Defendant. Please direct requests for reimbursement to:

Parvin D. Moyne
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Tel: 212-872-1076
Fax: 212-872-1002
Email: pmoyne@akingump.com

**12. Reciprocity:**

The courts of the United States are authorized by statute, 28 U.S.C § 1782, to extend similar assistance to the Courts of Ontario in like cases. This Court extends to the judicial authorities of Canada the assurances of its highest consideration.

**13. Confidentiality:**

This Court recognizes that it is asking its Canadian counterpart to order the disclosure of evidence that is potentially confidential. Accordingly, appended to this request as **Exhibit C** is a protective order to ensure the Canadian court and the Canadian witness that all disclosed information will be treated as confidential in accordance with the protective order.

**14. Certification of Status as a Court:**

This Court is a court of law and equity, and is not an administrative tribunal or consulate. The matter described herein is pending in this Court.

__________________________
Honorable J. Paul Oetken
Judge for the United States District Court for the
Southern District of New York
Thurgood Marshall US Courthouse
40 Foley Square
New York, NY 10007
Tel: 212-805-0266

Dated: This _________ day of ___________________, 2021