**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHE RIVOIRE,<br><br>Defendant. | Case No. 19-cv-11701 (JHR)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHRISTOPHE RIVOIRE'S MOTION TO EXCLUDE PORTIONS OF THE OPINION TESTIMONY OF THE CFTC'S EXPERT WITNESSES**

James J. Benjamin, Jr.
Parvin D. Moyne
Katherine L. Powers
Emily L. Hansen
Victoria Fydrych
Fatima Bishtawi

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036

*Counsel for Christophe Rivoire*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT....................1

ARGUMENT....................1

I. THE COURT SHOULD EXCLUDE PORTIONS OF THE PROPOSED TESTIMONY OF ANJAN THAKOR....................1

II. THE COURT SHOULD EXCLUDE PORTIONS OF THE PROPOSED TESTIMONY OF TERENCE MARK....................6

III. THE COURT SHOULD EXCLUDE PORTIONS OF THE PROPOSED TESTIMONY OF JUSTIN REGUS....................7

CONCLUSION....................8

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adesina v. Aladan Corp.*,
438 F. Supp. 2d 329 (S.D.N.Y. 2006)....5

*In re Blech Sec. Litig.*,
2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003)....4, 7

*Borawick v. Shay*,
68 F.3d 597 (2d Cir. 1995)....5

*Boucher v. U.S. Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996)....5

*Davis v. Carroll*,
937 F. Supp. 2d 390 (S.D.N.Y. 2013).... 1-2

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*,
311 F. Supp. 3d 653 (S.D.N.Y. 2018)....5

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008)....5

*McCullock v. H.B. Fuller Co.*,
61 F.3d 1038 (2d Cir. 1995)....5

*Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*,
2019 WL 1055527 (S.D.N.Y. Mar. 6, 2019)....4

*In re Omnicom Grp. Inc. ERISA Litig.*,
2022 WL 18674830 (S.D.N.Y. Dec. 23, 2022)....4, 7

*SEC v. U.S. Environmental, Inc.*,
2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002)....4

**Other Authorities**

Fed. R. Evid. 401....7

Fed. R. Evid. 403....7

Fed. R. Evid. 702....1, 4, 5, 7

## PRELIMINARY STATEMENT[1]

In our *Daubert* motion, we argued principally that portions of the opinion testimony to be offered by Thakor and Mark should be excluded under Federal Rule of Evidence 702 due to a lack of reliable foundation. The problem with Thakor and Mark's opinions, as we explained, is that both experts reviewed only a narrow, unrepresentative, and cherry-picked subset of the discovery record when formulating their opinions.

In its opposition, the CFTC leans into this deficiency. In particular, they repeatedly emphasize that Thakor's opinion testimony is based on his review of Najar's deposition testimony. But that is precisely the problem. Najar's deposition is only one piece of the evidentiary record in this case. Under Rule 702, an expert witness cannot offer opinion testimony to a jury unless he has done the necessary work to ensure that his opinions are properly grounded in the relevant facts. Because Thakor and Mark failed to meet this standard, their challenged opinion testimony should be excluded.

## ARGUMENT

### I. THE COURT SHOULD EXCLUDE PORTIONS OF THE PROPOSED TESTIMONY OF ANJAN THAKOR

The CFTC characterizes our *Daubert* motion as an attempt to "substantively quibble with Dr. Thakor's conclusions." (CFTC Opp. 9-17; *see also id.* at 1-2). This is not correct. Our Rule 702 motion is not based on the *substance* of Thakor's conclusions, but rather on the slipshod *process* that he followed in reaching those conclusions, which resulted in a deficient foundation. *See Davis v. Carroll*, 937 F. Supp. 2d 390, 418 (S.D.N.Y. 2013) (expert testimony based on

[1] "Rivoire Mot." refers to our memorandum of law in support of our Daubert motion (ECF 119); "CFTC Opp." refers to the CFTC's opposition to our Daubert motion (ECF 128). Exhibits 1-18 of the declaration of Katherine L. Powers, filed in support of our summary judgment motion (ECF 113), and exhibits 1-3 of the declaration of Izabelle R. Tully, filed in support of our Daubert motion (ECF 120), are deposition transcripts and expert reports cited herein.

"personal knowledge and experience" cannot be based on "inadequate factual foundations, problematic assumptions, or a misleadingly partial selection of relevant facts").

In its opposition brief, the CFTC does not rehabilitate Thakor's flimsy and shallow work product. To the contrary, the CFTC *admits* that Thakor's opinions are based on the deposition testimony of one witness: Morgan Najar. (CFTC Opp. 5 ("Based on Morgan Najar's testimony, Dr. Thakor found that Najar traded in ways other than he normally would have (to push the screen down) with a broker and, at times, in ways that he perceived to be less liquid."); *id.* at 10 ("Dr. Thakor's assertion was expressly based on the testimony of Najar."); *id*. at 10-11 n.10 ("Dr. Thakor reviewed Najar's complete testimony and is under no obligation to adopt Rivoire's factual narrative."); *id.* at 12 ("Dr. Thakor's report cites to specific supporting statements from Najar's deposition testimony"); *id*. ("Dr. Thakor recalled and expanded upon Najar's testimony and relevant exhibits."); *id*. at 14 n.14 ("Najar testified that at the time Rivoire told him to start selling at the moment of the live pricing, 'the whole-entire reason to sell was to push the screen.'"); *id*. at 16 ("Dr. Thakor relied on Najar's explicit testimony")).[2]

As the record makes clear, Thakor did not consider the market risk that HSBC assumed when it entered into the JBIC Issuer Swap or the fact that Najar had to hedge $2 billion in basis risk in relation to the issuer swap. (*See* Thakor Tr. 88:12-19 ("it's outside the scope of my analysis to look at what risks HSBC exposed itself to by entering into the swap . . . I did not

[2] The CFTC claims that Thakor reviewed "more than 70 deposition exhibits." (CFTC Opp. 8). Although Appendix B of Thakor's report generally states that he reviewed the "accompanying exhibits" to the depositions of Najar, Rivoire, and Dearie, the same Appendix B individually lists 15 specific documents – not 70 – that Thakor considered in forming his opinions. In Appendix B, Thakor divided these 15 documents into three categories: (i) emails, (ii) JBIC's pricing spreadsheet, and (iii) phone call transcripts. (Thakor Rep. App'x B; *see also* Rivoire Mot. 22). The footnotes to Thakor's report contain citations to each of the 15 documents cited in Appendix B, and there are no citations to any of the other deposition exhibits. Accordingly, to the extent that Thakor "considered" any deposition exhibits beyond the 15 documents enumerated in Appendix B – as the CFTC seems to suggest in its opposition papers – he did not discuss or cite those materials in his report, nor did he identify or describe them during his deposition.

specifically examine what the – the overall hedging needs of HSBC were.")). He likewise did not analyze or discuss any of the extensive trading, market, or pricing data that is contained in the discovery record. (*Id*. at 89:5-11 ("I did not examine the – the trading activities of any of the HSBC traders."); *see also id.* at 98:18-99:22 (testifying to a lack of recollection regarding trading records showing Najar's basis swap trading activity on the date of the Pricing Call)). According to the CFTC, this deficiency is not a problem because Thakor reviewed Najar's deposition testimony. (CFTC Opp. 9 n.7 ("As to the data, Dr. Thakor testified that he relied on other sources regarding Najar's trading, especially testimony from Najar, to form his opinion.")).

Thakor's failure to analyze trading and market data, in a market manipulation case, is bewildering. It is hard to fathom that he could purport to opine that Najar's trading was "uneconomic" when he did not review the hedging needs of HSBC, relevant trading records, the prices that Najar was able to achieve, the nature of Najar's market counterparties, and the process by which Najar transacted (*e.g.*, arms-length transactions via a leading interdealer broker). To illustrate the absurdity of this situation, imagine a hypothetical personal injury case in which the plaintiff's expert read the plaintiff's deposition testimony but did not bother to review medical test results, the treating physician's notes, or other evidence in the plaintiff's medical chart. One can imagine how the ensuing deposition might play out:

> ***Expert***: "Based on my review of the plaintiff's deposition, it is my expert opinion that she suffers from chronic pain in her leg as the result of a broken femur that she suffered on the job."
>
> ***Lawyer***: "Did you review the plaintiff's medical records, which show that she never had a broken leg?"
>
> ***Expert***: "No. Reviewing the medical records was outside the scope of my assignment."
>
> ***Lawyer***: "Did you review the part of the deposition transcript where the plaintiff was confronted with the medical records and admitted that her leg was not broken?"

> ***Expert***: "Yes, I saw something about that, but I also saw that the plaintiff was worried ahead of time that she might have an injury on the job. And so it doesn't change my opinion that she is suffering from chronic pain as a result of her broken leg."

This, in essence, is what Thakor did here.

In an attempt to salvage Thakor's egregiously deficient work product, the CFTC cites cases for the proposition that an expert is not required to review every piece of record evidence before providing an opinion, and that disagreements about the validity of an expert's conclusions can be explored on cross-examination. (CFTC Opp. 6-10). But this principle only comes into play if the expert has reviewed enough of the record to establish a foundation that can pass muster under Rule 702. If not, then the testimony should be excluded.

The CFTC's own cases illustrate the distinction. In some of the cases cited by the CFTC, the expert had done enough work to satisfy the reliability test of *Daubert* and Rule 702. *See In re Blech Sec. Litig.*, 2003 WL 1610775, at *22 (S.D.N.Y. Mar. 26, 2003) (in a market manipulation case, expert's opinion was based "on Bear Stearns' trading database and the trading records, deposition testimonies, and telephone transcripts provided to him"); *SEC v. U.S. Environmental, Inc*., 2002 WL 31323832, at *1, 3 (S.D.N.Y. Oct. 16, 2002) (in a securities fraud case, expert "reviewed and studied the trading records of USE and . . . compiled charts based on those records"); *In re Omnicom Grp. Inc. ERISA Litig.*, 2022 WL 18674830, at *4 (S.D.N.Y. Dec. 23, 2022) (expert "reviewed a substantial portion of the evidentiary record developed in this litigation, including the Investment Policy Statement, many sets of meeting minutes (though not all), and the deposition testimony of a majority of committee members"); *Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*, 2019 WL 1055527, at *4 (S.D.N.Y. Mar. 6, 2019) (expert's opinion was "grounded on sufficient facts to be admissible" because expert "reviewed the depositions of several fact witnesses, emails from the Panasonic design team, the expert report of Deacon Wardlow and corresponding exhibits, photographs of the DoubleTree Sign and . . . he

personally observed the sign"); *Adesina v. Aladan Corp*., 438 F. Supp. 2d 329, 341 (S.D.N.Y. 2006) (medical expert's opinion was based on results from a test that "checks a person's blood serum for what both parties refer to as IgE antibodies specific to the latex allergen," as well as the plaintiff's medical history).

In other cases cited by the CFTC, the expert failed to establish a sufficient foundation and the testimony was excluded. *See Boucher v. U.S. Suzuki Motor Corp*., 73 F.3d 18, 22 (2d Cir. 1996) (expert testimony about future earnings was inadmissible because it was "based on the unrealistic and speculative assumption that Boucher would have been employed on a permanent, full-time basis, year in and year out, had he not been injured"); *Dependable Sales & Serv., Inc. v. TrueCar, Inc*., 311 F. Supp. 3d 653, 660 (S.D.N.Y. 2018) ("Anderson's analysis suffers from the fundamental problem that he fails to support his conclusion that 100% of sales effectuated through TrueCar were motivated by the allegedly false 'no haggle' claim."); *Major League Baseball Props., Inc. v. Salvino, Inc*., 542 F.3d 290, 311-12 (2d Cir. 2008) (expert's opinion was "entirely conclusory" and did not discuss or refute the opposing expert's countervailing views, which was "annotated with citations to documents and interviews of MLBP Clubs' personnel who had firsthand knowledge").[3]

In our opening brief, we cited additional cases in which courts excluded expert opinion testimony based on a failure to adequately consider the evidence in the case. (*See* Rivoire Mot. 6-7). We are aware of no precedent, and the CFTC has cited none, in which an expert was permitted to render opinion testimony that was so heavily dependent on the (direct) deposition testimony of a single witness. The challenged testimony should be excluded under Rule 702.

[3] The CFTC's other cases are not pertinent. *McCullock v. H.B. Fuller Co*., 61 F.3d 1038 (2d Cir. 1995), dealt with a challenge to the expert's qualifications, not to the lack of foundation for his opinions. *Borawick v. Shay*, 68 F.3d 597 (2d Cir. 1995), established the test for admissibility of post-hypnotic testimony of an alleged victim of sexual abuse.

The only part of Thakor's report that is not premised solely on Najar's deposition is Thakor's assertion that there "were many other market participants like hedge funds and other banks who would have been looking at these Reuters screens for prices to determine their own trading and settle their own contracts." (Thakor Rep. ¶ 62; *see also id*. ¶¶ 22, 58). In an attempt to defend this portion of Thakor's report, the CFTC cites to deposition testimony of Christopher Dearie (which Thakor reviewed) that other banks "had access to" the USDBASIS screen in July 2012. (CFTC Opp. 17). But having access to a broker screen is very different than the proposition suggested by Thakor: that other banks actually were looking at the USDBASIS screen at the time of the Pricing Call. (Thakor Rep. ¶¶ 22, 58, 62). To make the leap between accessing and viewing, some additional evidentiary foundation is required, but none exists in the record.[4]

## II. THE COURT SHOULD EXCLUDE PORTIONS OF THE PROPOSED TESTIMONY OF TERENCE MARK

With respect to Mark, the CFTC criticizes us for providing a "laundry list of competing facts" that, according, to the CFTC, "should be explored on cross-examination and weighed by the jury." (CFTC Opp. 20). As with Thakor, the CFTC misapprehends our argument, which is based on the lack of *foundation* for Mark's opinions.

With respect to foundation, the CFTC argues that even though Mark only reviewed two deposition transcripts in their entirety – those of Najar and Rivoire – and even though Mark disregarded the deposition testimony of the ICAP witnesses, his limited review of the evidence is nevertheless sufficient to support his opinions, including his theatrical claims that Najar used

[4] The CFTC defends Thakor's bad behavior during his deposition, going as far as to characterize our objections as "preposterous." (CFTC Opp. 18). There is a transcript of Thakor's deposition, and the record speaks for itself. In our *Daubert* motion, we cited numerous examples in which we asked proper questions, only to be met by rambling, argumentative, non-responsive, and objectionable responses. (Rivoire Mot. 21). Thakor's behavior should be criticized lest it recur in the future.

"threats" and "intimidation" to pressure Mike McDonnell to move ICAP's screen. (CFTC Opp. 19-23). In seeking to defend Mark's failure to consider the testimony of McDonnell – the purported victim of Najar's campaign of intimidation – the CFTC makes the head-scratching argument that "Mark's opinion relates to what a reasonable counterparty would deem important, not how McDonnell now interprets the communications." (CFTC Opp. 22). One would have thought it self-evident that a "reasonable counterparty" would want to know the context of purportedly "threatening" and "intimidating" communications, including whether the alleged victim agreed or disagreed with the CFTC's characterization. But that didn't stop Mark from charging ahead with his counterfactual hypothesizing. As noted above, the CFTC's own cases demonstrate that an expert's opinion testimony must be supported by an adequate foundation. *See Blech*, 2003 WL 1610775, at *22 (expert reviewed trading records, deposition transcripts, and audio recordings); *Omnicom,* 2022 WL 18674830, at *4 (expert reviewed "a substantial portion of the evidentiary record developed in this litigation"). Here, Mark's challenged opinion testimony fails to satisfy the requirements of Rule 702.

## III. THE COURT SHOULD EXCLUDE PORTIONS OF THE PROPOSED TESTIMONY OF JUSTIN REGUS

With respect to Regus, we do not challenge the accuracy of his calculations, but we do object to the arbitrary exercise by which he purported to characterize "additional" cash flows to be paid by HSBC to JBIC over the life of the swap. (Rivoire Mot. 30-32). In response, the CFTC argues that Regus's "mandate was to quantify how changes in the screens affected cash flows, not to analyze their causes." (CFTC Opp. 24). But this is the problem. Without any attempt to "analyze the cause" of a change in cash flows between two arbitrarily-selected points in time, the exercise is irrelevant, confusing, unfairly prejudicial, and lacking in foundation. *See* Fed. R. Evid. 401, 403, 702.

Similarly, Regus's opinion regarding whether the one-week forward level of -0.3 was an "outlier" is irrelevant and poses a risk of confusion and unfair prejudice. As explained in our opening brief, given the technical malfunctions within ICAP, there is no basis to assume that any level displayed on the USDBASIS screen was accurate in July 2012; the record indicates that the accurate relationship between the spot and one-week forward price for 5-year 6s3s basis swaps was somewhere between -0.1 and -0.3 on the day of the Pricing Call; and it was ICAP, and not HSBC, that chose to set the one-week forward level at -0.3 during the Pricing Call. (Rivoire Mot. 32-33).

With respect to our other objections to Regus's opinion testimony, including Regus's lack of foundation and qualifications to opine on traders' communications, we rely on the points raised in our opening brief.

**CONCLUSION**

For the foregoing reasons, the Court should exclude portions of the opinion testimony to be offered by Anjan Thakor, Terence Mark, and Justin Regus.

Dated: August 8, 2023
New York, New York

Respectfully submitted,

*/s/ Parvin D. Moyne*
James J. Benjamin, Jr.
Parvin D. Moyne
Katherine L. Powers
Emily L. Hansen
Victoria Fydrych
Fatima Bishtawi

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000

*Counsel for Christophe Rivoire*